# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2021-CA-01210-SCT

*CITY OF CANTON, MISSISSIPPI BOARD OF*
*ALDERMEN*

*v.*

*L.C. SLAUGHTER AND ISIAC JACKSON*


| | |
|---|---|
| DATE OF JUDGMENT: | 09/29/2021 |
| TRIAL JUDGE: | HON. M. BRADLEY MILLS |
| TRIAL COURT ATTORNEYS: | EDWARD BLACKMON, JR. |
| | BARBARA BLACKMON |
| | BRADFORD JEROME BLACKMON |
| | PIETER TEEUWISSEN |
| | KIMBERLY BANKS |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | KIMBERLY BANKS |
| | PIETER TEEUWISSEN |
| ATTORNEY FOR APPELLEES: | EDWARD BLACKMON, JR. |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 03/16/2023 |
| MOTION FOR REHEARING FILED: | |


**BEFORE KING, P.J., CHAMBERLIN AND ISHEE, JJ.**

**CHAMBERLIN, JUSTICE, FOR THE COURT:**

¶1.     This case concerns the removal of two commissioners of the Canton Municipal Utilities Commission (CMU Commission) by the City of Canton Board of Aldermen (the Board). The Mayor of Canton vetoed a resolution of the Board issuing notice and an opportunity to be heard to the commissioners. The Board claimed to override the veto by a vote of two-thirds of the majority of members, although in actuality it failed for lack of the

requisite majority. It then proceeded with a hearing and ultimately removed the commissioners from their appointed positions. The decision of the Board was appealed to the Madison County Circuit Court. The court reversed the decision to remove the commissioners, finding that the Board failed to override the Mayor's veto and that the actions taken to remove the commissioners following the failure to override the veto were void as a matter of law. The Board timely appealed to this Court, claiming the commissioners' notice of appeal contained fatal jurisdictional errors, notice and an opportunity to be heard were not required for the removal to be effective and the Board properly overrode the Mayor's veto. After a careful review of the law, this Court affirms the judgment of the circuit court.

## FACTS AND PROCEDURAL HISTORY

¶2.     L.C. Slaughter and Isiac Jackson were appointed by the Board to the CMU Commission, each to serve for a term of five years. Slaughter's term began on June 20, 2018, and was to extend until July 1, 2023, while Jackson's was to last from December 5, 2017, through July 1, 2022. In late April and early May 2020, the Board removed Slaughter and Jackson from their positions as CMU commissioners, and Slaughter and Jackson appealed that decision to the Madison County Circuit Court on June 17, 2020. The court granted a stay of their removal, listing one of the reasons for doing so as "whether or not due process was afforded in the removal[.]" Instead of filing briefing with the court on the issue—as directed by the circuit court judge at a hearing on the matter and in the order granting a stay—the Board issued the "Resolution Of The City Of Canton To Issue Notice For Cause Against L.C.

2

Slaughter And Isiac Jackson Of The Canton Municipal Utility Commission Pursuant To Mississippi Statute" on July 7, 2020. The resolution gave notice to Slaughter and Jackson as to cause for discharge and scheduled a hearing to take place on July 21, 2020, at the next regularly scheduled Board meeting. On July 15, 2020, the attorney for the city of Canton sent emails to Slaughter and Jackson's attorney, notifying them of the date and time of the hearing as well as a list of reasons for considering their removal as commissioners. On July 17, 2020, Canton Mayor William Truly timely vetoed the July 7, 2020 resolution.

¶3. At the July 21, 2020 meeting of the Board, Mayor Truly was absent and the Board named Alderman Fred Esco as the mayor pro tempore to preside over the meeting in accordance with Mississippi Code Section 21-3-13 (Rev. 2015). The Board then held a vote to override Mayor Truly's July 17 veto of the resolution to issue notice and an opportunity to be heard to Slaughter and Jackson. Two-thirds of the Board members must vote in the affirmative to override a mayoral veto. *See* Miss. Code Ann. § 21-3-15(2)(b) (Rev. 2015). The Board consists of seven members, requiring at least five affirmative votes to override a veto. At the July 21 meeting, the Board voted to override the veto by 5-1, including Alderman Esco's vote. The Board then proceeded with the hearing. Neither Slaughter nor Jackson nor their attorney was present at the hearing. After the hearing concluded, the Board voted to remove Slaughter and Jackson from their positions as CMU commissioners. The Board stated the following reasons for removing Slaughter: 1) "[t]aking official actions at CMU Board meetings, without having bond as required by statute[,]" 2) "utilizing CMU

3

employees and equipment to have a tree cut down on his residence and taken away" and 3) "[a]dvising the public that video recording of public meetings is impermissible, contrary to Mississippi Ethics Statutes and other authority[.]" The Board also removed Jackson for reasons one and three and for "failing to live in the City of Canton as required by statute to hold the position of CMU Commissioner[.]" The Board issued a resolution removing Slaughter and Jackson, which was approved by Alderman Esco, acting as mayor pro tempore, on July 21, 2020.

¶4. On July 27, 2020, Mayor Truly issued a veto of the hearing held for Slaughter and Jackson following the Board's attempt to override the July 17 veto and the resolution to remove Slaughter and Jackson. On July 31, 2020, Slaughter and Jackson filed an appeal of the Board's decision to remove them in the Madison County Circuit Court. On August 4, 2020, the Board held a special meeting to override Mayor Truly's veto from July 27, 2020. Like the regularly scheduled July 21 meeting, Mayor Truly was not in attendance, and Alderman Esco once again was appointed mayor pro tempore. With Alderman Esco participating, the vote to override the Mayor's veto at the August 4, 2020 special call meeting was 5-0, since two aldermen were absent.

¶5. In addition to their appeal of the Board's decision, Slaughter and Jackson also filed in circuit court an Emergency Motion for Stay Pending Appeal of the Board's July 21 resolution removing them. The circuit court denied the motion on September 8, 2020. Both parties then submitted briefs to the court, and the Board moved to dismiss the appeal under

4

Mississippi Rules of Civil Procedure 12(b)(1), (2), (4), (6) and (7). On September 29, 2021, the court issued an order finding that the Board vote that took place on July 21, 2020, to override the Mayor's veto failed to pass since it lacked the requisite two-thirds majority. Furthermore, the court found that the actions taken to remove Slaughter and Jackson following the hearing were "void as a matter of law." Finally, the court reinstated Slaughter and Jackson to their positions as CMU commissioners. From this order, the Board timely appealed.

## ISSUES PRESENTED

The issues raised by the Board on appeal can best be summarized as follows:

I.  Whether Slaughter and Jackson's notice of appeal should be dismissed on jurisdictional grounds.

II.  Whether notice and an opportunity to be heard is required to remove a CMU commissioner.

III.  Whether the Mayor properly vetoed the resolutions of the Board, and whether the Board properly overrode those vetoes.

## STANDARD OF REVIEW

¶6.  "We apply the same standard of review to the Board's legislative act as we apply in our review of administrative agency decisions." *Ball v. Mayor & Bd. of Aldermen of Natchez*, 983 So. 2d 295, 304 (Miss. 2008) (quoting *Falco Lime, Inc. v. Mayor & Aldermen of Vicksburg*, 836 So. 2d 711, 721 (Miss. 2002)). "[D]ecisions by the governing authorities of a municipality are subject to limited review." *McAdams v. Perkins*, 204 So. 3d 1257, 1261 (Miss. 2016) (citing *McWaters v. City of Biloxi*, 591 So. 2d 824, 827 (Miss. 1991)). "A

5

decision will be overturned 'only if the decision (1) was beyond its scope or power; (2) violated the constitutional or statutory rights of the aggrieved party; (3) was not supported by substantial evidence; or (4) was arbitrary or capricious.'" ***Jones v. City of Canton***, 278 So. 3d 1129, 1131 (Miss. 2019) (quoting ***McAdams***, 204 So. 3d at 1261). As always, questions of law are reviewed de novo. ***Wayne Cnty. Sch. Dist. v. Quitman Sch. Dist.***, 346 So. 3d 853, 857 (Miss. 2022) (citing ***Alexis v. Black***, 283 So. 3d 1105, 1105 (Miss. 2019)).

## DISCUSSION

### I. The notice of appeal was sufficient to confer jurisdiction.

¶7. The Board argues that Slaughter and Jackson's notice of appeal failed to meet three of the jurisdictional requirements of Mississippi Code Section 11-51-75 (Rev. 2019), thus depriving this Court of jurisdiction. The Board claims that Slaughter and Jackson's notice of appeal 1) failed to name the City of Canton as the appellee, 2) lacked a description or designation of the record for appeal, and 3) was not timely filed. These arguments are without merit.

¶8. Mississippi Code Section 11-51-75(a)(i) (Rev. 2019) states that the notice of appeal from a decision of a municipal authority shall contain "[t]he name of the county board of supervisors or the name of the municipality as the appellee." In the instant case, Slaughter and Jackson named the City of Canton, Mississippi, Board of Aldermen as the appellee. The Board argues that the language of Section 11-51-75(a)(i) requires Slaughter and Jackson to name the City of Canton as the appellee rather than the City of Canton Board of Aldermen.

6

This argument elevates form over substance. Naming the City of Canton Board of Aldermen was sufficient to comply with the requirements of Mississippi Code Section 11-51-75(a)(i). The Board fails to cite any authority for this Court to dismiss an appeal for lack of jurisdiction based on a failure to name the municipality as the appellee rather than the municipality's board of aldermen. In *American Tower Asset Sub, LLC v. Marshall County*, 324 So. 3d 300, 300 (Miss. 2021), the appellant, American Tower, named Marshall County as the appellee in its notice of appeal from a decision of the county's board of supervisors. This Court found that American Tower's notice of appeal "complied with Section 11-51-75(a)(i)-(iv)[,]" even though American Tower named the county instead of the county board of supervisors. *Id.* at 303-04. Like the notice of appeal in *American Tower*, Slaughter and Jackson's notice of appeal naming the Board, rather than the municipality, was sufficient to comply with Section 11-51-75(a)(i).

¶9.     The Board also argues that the notice of appeal lacked a description or designation of the record as required by Mississippi Code Section 11-51-75(a)(iii) (Rev. 2019). This argument is similarly without merit. Slaughter and Jackson attached documentation as exhibits to their notice of appeal and included a detailed description of the purpose and significance of each exhibit. The description or designation of the record must include "all matters that the appellant desires to be made part of the record." Miss. Code Ann. § 11-51-75(a)(iii). The exhibits attached to the notice of appeal included all matters that Slaughter and Jackson wished to be considered by the court and therefore satisfied the record requirement.

¶10. The Board's final jurisdictional argument is that Slaughter and Jackson's notice of appeal was untimely because it was filed on July 31, 2020, before the Board's August 4, 2020, special meeting that had been called to override Mayor Truly's July 27 veto of the hearing and resolution to remove Slaughter and Jackson. The Board states that only after the August 4 meeting was the decision of the Board to remove Slaughter and Jackson a final, appealable decision. The Board cites *City of Madison v. Shanks*, 793 So. 2d 576 (Miss. 2000), to support its contention that Mayor Truly's July 27 veto of the July 21 meeting resolution to remove Slaughter and Jackson was not a final, appealable action until the Board's August 4 meeting was held to either override or accept the veto. In *Shanks*, this Court found that a mayoral veto becomes final when the Board either accepts or overrides the veto. *Id.* at 581. The July 27 veto and August 4 meeting, however, were inconsequential because the final, appealable action occurred when the Board issued a resolution to remove Slaughter and Jackson on July 21, 2020, and that resolution was approved by Mayor Pro Tempore Esco.

¶11. Elsewhere in the Board's brief, it argues that the action taken to remove Slaughter and Jackson at the July 21 meeting and Mayor Pro Tempore Esco's approval of the removal was a final decision that could not be voided or vetoed by Mayor Truly upon his return. We agree. The Board cites Mississippi Attorney General Opinion, No. 2012-00366, 2012 WL 3535950, *Weems*, at *2 (July 27, 2012), as persuasive authority opining that the approval of a resolution by the mayor pro tempore, "when acting in that capacity, is final and is not

8

reversible by the mayor upon returning from [the mayor's] temporary absence." Following this logic, Slaughter and Jackson's notice of appeal was timely filed, since the July 27 veto and August 4 Board meeting were inconsequential given the final nature of the July 21 resolution and approval by the mayor pro tempore to remove Slaughter and Jackson. The Board's reasoning supporting the finality of the July 21 resolution to remove Slaughter and Jackson is correct. The final, appealable decision of the Board was the July 21 resolution to remove Slaughter and Jackson, which was approved by Alderman Esco, acting in his capacity as mayor pro tempore. Therefore, the notice of appeal was timely filed within the ten-day statutory limit. *See* Miss. Code Ann. § 11-51-75.

**II.     A CMU commissioner is a public officer who is entitled to notice and an opportunity to be heard prior to removal for cause.**

¶12.    The Board argues that Slaughter and Jackson were not entitled to notice and an opportunity to be heard because Mississippi Code Section 21-27-15 (Rev. 2015) specifically provides for the removal of commissioners "for inefficiency or incompetency or any other cause[.]" In ***Jones v. City of Canton***, however, this Court found procedural due process necessary to remove an appointed school board trustee whom it found to be a public officer, holding that "[p]rocedural due process requires that a person who is subject to adverse government action receive notice of the charges against them, an explanation of the employer's evidence, and an opportunity to be heard." ***Jones***, 278 So. 3d at 1134 (citing ***Cleveland Bd. of Educ. v. Loudermill***, 470 U.S. 532, 546, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985)).

9

¶13. In *Jones*, the City of Canton Board of Aldermen removed Walter Jones from his appointed position as trustee of the Canton Public School District. *Id.* at 1130. Jones appealed his removal first to the circuit court—which affirmed the board's action—and then to this Court. *Id.* at 1131. This Court determined that Jones—as a public officer—was entitled to procedural due process and that his removal by the board did not afford him that right. *Id.* at 1134-35. Because "[t]he Board's decision was made without notice or hearing," Jones was left "to the whims of the Board in violation of [his] due-process rights." *Id.* at 1135. Additionally, this Court noted that a public officer may be removed under a statute that provides for removal for cause in conjunction with procedural due process. *Id.* at 1134-35 (quoting *State ex rel. Att'y Gen. v. McDowell*, 111 Miss. 596, 71 So. 867, 868 (1916)). The Court in *Jones* noted that the Mississippi Constitution provides for the removal of public officers "for wilful neglect of duty or misdemeanor in office" upon conviction following a grand jury indictment. Miss. Const. art. 6, § 175. While the Mississippi Constitution provides cause and a method for removal of public officers, this Court in *Jones* indicated that when a specific statute allowing for removal exists, it may be utilized so long as it is constitutional. *Jones*, 278 So. 3d at 1132.

¶14. In *Glover v. City of Columbus*, 197 Miss. 467, 19 So. 2d 756, 757 (Miss. 1944), this Court defined public officer, stating, "[a] public officer, broadly speaking, is a person appointed or elected to perform a designated duty concerning the public." Furthermore, persuasive authority from the attorney general has indicated that commissioners of public

10

utility commissions fall within the definition of a public officer. *See* Miss. Att'y Gen. Op., 1980 WL 28505, *Alford*, at *1 (June 23, 1980). The utility commissioners in the present case are rightly included in the definition of public officer because they were appointed to discharge a public duty and are therefore entitled to notice and an opportunity to be heard prior to their removal.

¶15.    The Board attempts to distinguish the instant case from *Jones* by pointing out that in *Jones*, there was no directly applicable statute allowing for the removal of a school board trustee, but a statute—Mississippi Code Section 21-27-15—does allow for the removal of members of a commission created by municipal authorities. Although Section 21-27-15 provides for the removal of commissioners for cause, it does not provide a process of removal. Additionally, this Court in *Jones* cited *McDowell*, a case that concerned a specific statute for removal; the Court still required that the public officer be afforded notice and an opportunity to be heard prior to his removal. *McDowell*, 71 So. at 867-68. The procedural due process afforded to public officers facing removal from office is an established right. Mississippi caselaw is clear that public officers are entitled to notice and an opportunity to be heard prior to removal. *See Jones*, 278 So. 3d at 1134; *McDowell*, 71 So. at 867-68; *Ware v. State ex rel. Poole*, 111 Miss. 599, 71 So. 868, 870 (Miss. 1916). Absent notice and an opportunity to be heard prior to removal, the Board's decision to remove Slaughter and Jackson from their appointed positions was improper.

**III.    Mayor Truly vetoed the Board's July 7 resolution, and the Board failed to override the veto, resulting in the improper removal of Slaughter and Jackson.**

¶16.    Mississippi Code Section 21-3-15(2)(b) lays out the Mayor's power to veto or approve resolutions of the Board within ten days and the Board's power to override Mayoral vetoes. It states:

> (b) Ordinances adopted by the board of aldermen shall be submitted to the mayor. The mayor shall, within ten (10) days after receiving any ordinance, either approve the ordinance by affixing his signature thereto, or return it to the board of aldermen by delivering it to the municipal clerk together with a written statement setting forth his objections thereto or to any item or part thereof. No ordinance or any item or part thereof shall take effect without the mayor's approval, unless the mayor fails to return an ordinance to the board of aldermen prior to the next meeting of the board, but no later than fifteen (15) days after it has been presented to him, or unless the board of aldermen, upon reconsideration thereof on or after the third day following its return by the mayor, shall, by a vote of two-thirds (2/3) of the members of the board, resolve to override the mayor's veto.

Miss. Code Ann. § 21-3-15(2)(b). Mississippi Code Section 21-3-15(3) (Rev. 2015) (emphasis added) provides that "[t]he term 'ordinance' as used in this section shall be deemed to include ordinances, *resolutions* and orders." The City of Canton's Board of Aldermen consists of seven members. Therefore, a vote to override a mayoral veto would require five of the Board members to vote affirmatively.

¶17.    On July 17, 2020, Mayor Truly vetoed the Board's resolution of July 7, 2020, to issue notice and provide an opportunity to be heard to Slaughter and Jackson. This veto was properly executed within the statutory ten day limit set out in Section 21-3-15(2)(b). In order to move forward and properly issue notice and conduct a hearing, the Board needed to vote

12

by a two-thirds majority to override Mayor Truly's veto, since no resolution may take effect without the Mayor's approval or the Board's override of the Mayor's veto. *See* Miss. Code Ann. § 21-3-15(2)(b). At the July 21 meeting of the Board, a vote was held to override this veto. Alderman Esco—acting as the mayor pro tempore in Mayor Truly's absence—voted along with the majority of the aldermen present, resulting in a vote of five to one.

¶18.    An alderman acting as the mayor pro tempore and presiding over a Board meeting may only vote as the Mayor would: in case of a tie. Mississippi Code Section 21-3-13 states that in the case of "temporary absence or disability of the mayor[,]" the board "shall elect from among its members a mayor pro tempore, who shall serve in the place of the mayor[.]" Mississippi Code Section 21-3-15(1) (Rev. 2015) states that "[t]he mayor shall preside at all meetings of the [Board], and in case there shall be an equal division, shall give the deciding vote." "For statutory interpretation, the initial inquiry is whether the statute at issue is ambiguous." ***Hall v. State***, 241 So. 3d 629, 631 (Miss. 2018) (citing ***Miss. Ins. Guar. Ass'n v. Cole ex rel. Dillon***, 954 So. 2d 407, 412-13 (Miss. 2007)). This Court has yet to directly address the powers and limitations of an alderman acting as the mayor pro tempore; however, several of our attorney general opinions have stated that a mayor pro tempore may only vote as the Mayor would. *See* Miss. Att'y Gen. Op., 1982 WL 44805, *Williams*, at *1-2 (July 13, 1982); Miss. Att'y Gen. Op., 1981 WL 39224, *Wilson*, at *1 (Apr. 1, 1981); Miss. Att'y Gen. Op., 1982 WL 44397, *Thomas*, at *1 (Feb. 17, 1982). Section 21-3-13, allowing for the election of a mayor pro tempore, states that in the case of such an election, the selected

13

alderman "shall serve in the place of the mayor[.]" The language of Section 21-3-13 is unambiguous and gives the alderman acting as the mayor pro tempore the same powers and limitations of the presiding mayor. The mayor pro tempore is the acting mayor and thus may only cast a vote at a Board meeting in the case of a tie.

¶19. Without the inclusion of Aldermen Esco's vote, the vote total was four to one—one vote less than required to override the veto—and the Board failed to override the Mayor's veto of the resolution to issue notice and an opportunity to be heard. Regardless, the Board states that "although arguably not required by statute," Slaughter and Jackson were clearly provided with notice and an opportunity to be heard. But, absent the Mayor's approval of the resolution, the Mayor's failure to act on the resolution, or the Board's override of the veto of the resolution, neither the resolution or any part of it may take effect. *See* Miss. Code Ann. § 21-3-15(2)(b). Therefore, despite the Board's contention that notice and a hearing were provided, they were ineffective due to Mayor Truly's veto and the Board's failure to override the veto.

## CONCLUSION

¶20. This Court affirms the order of the circuit court. Notice and an opportunity to be heard are required to remove public utilities commissioners from their appointed positions. Since the Mayor properly vetoed the issuance of notice and an opportunity to be heard and the Board failed to override that veto, Slaughter and Jackson were deprived of procedural due

process rights to which they are entitled as public officers. Without valid notice and an opportunity to be heard, the Board's removal of Slaughter and Jackson was ineffective.

¶21. **AFFIRMED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, ISHEE AND GRIFFIS, JJ., CONCUR.**